Rory C. Quintana (SBN 258747)
John J. Darin (SBN 323730)
QUINTANA HANAFI, LLP
1939 Harrison St., Ste. 202
Oakland, CA 94501
Telephone: (415) 504-3121
Fax: (415) 233-8770
rory@qhplaw.com

*Attorneys for Plaintiff Megan Kao*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**MEGAN KAO,** an individual,

Plaintiff,

v.

**ANTHROPIC, PBC**, a Delaware corporation; and **DOES 1 through 10**, inclusive,

Defendants.

CASE NO.:

**COMPLAINT FOR DAMAGES**

**(1) DISCRIMINATION IN VIOLATION OF THE FMLA (29 U.S.C. §§ 2601-19, 2651-54);**
**(2) INTERFERENCE WITH FMLA RIGHTS (29 U.S.C. §§ 2601-19, 2651-54);**
**(3) DISCRIMINATION IN VIOLATION OF THE CFRA (Cal. Gov't Code § 12956.2);**
**(4) DISABILITY DISCRIMINATION IN VIOLATION OF THE FEHA (Cal. Gov't Code § 12940(a));**
**(5) RETALIATION IN VIOLATION OF THE FEHA (Cal. Gov't Code § 12940(m)(2)); and**
**(6) WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

**DEMAND FOR JURY TRIAL**

Plaintiff MEGAN KAO (herein "Plaintiff" or "KAO"), for claims for relief against Defendant ANTHROPIC, PBC (herein "Defendant" or "ANTHROPIC") alleges:

**NATURE OF THIS ACTION**

1. This is an action for relief from Defendants' violations of the Family Medical Leave Act (herein "the FMLA"), the California Family Rights Act (herein "the CFRA"), discrimination and retaliation in violation of the California Government Code, and for Defendant's wrongful termination of Plaintiff in violation of public policy.

2. Plaintiff is an individual who was eligible for FMLA and CFRA leave who had requested FMLA and CFRA leave. Defendant terminated Plaintiff following her return from FMLA and CFRA leave and after Plaintiff requested new accommodations for her disability

3. Plaintiff seeks compensatory, liquidated, general and punitive damages, reasonable attorneys' fees, and costs, as well as other appropriate relief as determined by this court, for Defendants' violations of his rights.

**JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

4. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

5. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b), because the events giving rise to Plaintiff's claims occurred in this District.

6. Pursuant to Northern District Local Rule 3-2 (c) & (d) this action should be assigned to San Francisco or Oakland, California, as the actions giving rise to Plaintiff's claims took place in San Francisco County.

7. On or about November 6, 2026, Plaintiff received a right-to-sue letter from the California Civil Rights Department. A true and correct copy of this letter is attached hereto as Exhibit A.

**PARTIES**

8. Plaintiff is a U.S. citizen and a resident of San Francisco County in this judicial district.

9. Plaintiff is informed and believes and based thereon alleges that Defendant is California corporation, headquartered at 500 Howard Street, San Francisco, California, and licensed to do business in California under Entity Number 4688086.

10. Plaintiff began working for Defendant on or about April 15, 2025.

11. At the time of her termination, Plaintiff was an otherwise qualified person within the meaning of the FMLA and the CFRA.

12. Plaintiff worked for Defendant in excess of one year, and in excess of 1,250 hours in the year immediately prior to requesting leave in 2026.

13. Plaintiff is informed and believes and based thereon alleges that Defendant is an employer as defined by 29 C.F.R. § 825.104, as it is engaged in commerce or activity affecting commerce and employs fifty or more people.

14. At all material times and for all purposes relevant to the claims made herein, Plaintiff was an "employee" within the meaning of 29 U.S.C. § 203(e) and the California Government Code.

15. At all material times and for all purposes relevant to the claims made herein, Defendant was an "employer" within the meaning of 29 U.S.C. 203(d) and the California Government Code.

16. This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself of the privileges of conducting activities in the State of California and established minimum contacts sufficient to confer jurisdiction over Defendant, and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

17. Defendant has had and continues to have continuous and systematic contacts with the State of California sufficient to establish general jurisdiction over Defendant.

18. Defendant advertises, employs workers, maintains offices and contacts with businesses in California.

19. The causes of actions listed in the Complaint arose from or relate to the contacts of Defendant with a California resident, thereby conferring specific jurisdiction over Defendant.

20. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 to 10 and therefore sue those Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of those fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned Defendants.

21. Plaintiff is informed and believes and thereon alleges that each of the Defendants herein were, at all times relevant to this action, the agents, employees, representing partners, supervisors, managing agents, joint venturers, joint employers of the remaining Defendants and were acting within the course and scope of that relationship. Plaintiff is further informed and believes and thereon alleges that each of the Defendants gave consent to, ratified, and authorized the acts alleged herein to each of the remaining Defendants. Defendants are sued both in their own right and on the basis of *respondeat superior*.

## FACTS COMMON TO ALL CAUSES OF ACTION

22. Plaintiff began her employment with Defendant on or about April 15, 2025, as a member of Defendant's Go-to-Market Finance and Strategy organization.

23. Plaintiff's compensation while employed by Defendant included a base salary of $235,000, an option grant of 4,750 shares at a strike price of $23.75 per share, and an award of 8,200 restricted stock units, scheduled to begin vesting quarterly on August 20, 2026.

24. During her employment with Defendant, Plaintiff's portfolio was substantial and highly visible. Plaintiff served as the sole Go-to-Market finance partner for the enterprise sales segment carrying a billion-dollar run rate and a team of approximately 100 salespeople. In addition, Plaintiff also owned finance coverage for the Claude Code and Claude for Work product lines, made go-to-market recommendations, and presented her findings to Defendant's executives on a monthly basis. Combined, Plaintiff covered a multi-billion-dollar book of business.

25. During her employment, Plaintiff received only positive performance indicators, was never placed on a performance improvement plan, either formal or informal, and was never disciplined. Indeed, in early December of 2025, Plaintiff's supervisor, Neha Garg, informed her

that Plaintiff would promote to a new Commercial role in 2026 and that she had already notified their Human Resources Business Partner.

26. On or about December 15, 2025, Plaintiff, who is currently 32 years old, suffered an acute cardiac episode and was hospitalized.

27. On or about December 16, 2025, Plaintiff informed her supervisor, Neha Garg, that she had been hospitalized, disclosing her disability to Defendant for the first time.

28. At approximately 5:37 p.m. that same evening, Ms. Garg texted Plaintiff and instructed her to stop working.

29. During this initial admission to the hospital, Plaintiff's physicians began discussing future heart transplantation, and Plaintiff remained hospitalized for nine days before she was discharged on December 24, 2025.

30. Defendant was closed between December 20, 2025, and January 4, 2026, for company holiday. Plaintiff requested and Defendant approved five days of paid sick leave, from January 5, 2026, through January 9, 2026.

31. On or about January 8, 2026, while she was on approved sick leave, Plaintiff suffered another acute episode requiring emergency hospitalization and admission to the intensive care unit at UCSF.

32. On or about January 12, 2026, Plaintiff began medical leave as an accommodation for her disability. During her hospitalization, Plaintiff was diagnosed with end-stage heart failure and told she would not leave the hospital without a transplant.

33. On or about January 31, 2026, Plaintiff underwent heart transplant surgery and remained hospitalized until her discharge on or about February 9, 2026.

34. During this period, Ms. Garg confirmed to Plaintiff that she had notified her superiors, Genevieve Klobuchar, Defendant's Head of Go-to-Market Finance and Strategy, and Devin Whittle, Defendant's Head of Finance and Strategy, of Plaintiff's heart transplant.

35. Plaintiff's recovery from the heart transplant was intensive. For the first month of her recovery, Plaintiff underwent weekly cardiac biopsies performed through an incision in her neck, had blood work done twice weekly, and was required to have a weekly in-person clinic visit.

36. On or about March 3, 2026, Plaintiff notified Defendant that she would return to work on May 1, 2026. However, rather than arrange temporary coverage during Plaintiff's leave, Defendant instead hired and onboarded two new employees to assume Plaintiff's responsibilities.

37. On or about April 14, 2026, Plaintiff submitted a one-time request to extend her return-to-work date to June 1, 2026. Defendant approved the extension the same day.

38. On or about April 15, 2026, Plaintiff reached her one-year work anniversary with Defendant, and Defendant designated Plaintiff's leave as FMLA/CFRA leave running through June 1, 2026.

39. The period of Plaintiff's leave coincided with significant public developments for Defendant. On or about February 6, 2026, Goldman Sachs and Defendant publicly announced a direct enterprise engineering partnership in a global broadcast. On or about May 4, 2026, Defendant issued a press release detailing its strategic entry into the mid-market and small and medium-enterprise deployment segments. On or about May 13, 2026, Defendant announced Claude for Small Businesses. On or about May 28, 2026, Defendant announced a Series H financing round raising an additional $65 billion at a $965 billion valuation floor. On or about June 1, 2026, Defendant confidentially submitted its draft Form S-1 to the Securities and Exchange Commission.

40. On or about June 1, 2026, Plaintiff returned to work for Defendant.

41. On or about June 1, 2026, Plaintiff met with Defendant's accommodations team to walk through her reasonable accommodation requests, which included: (1) hybrid work from home and (2) time to attend mandatory medical appointments. Defendant approved these requests and provided written confirmation.

42. Approximately thirty minutes after her meeting with Defendant's accommodations team, Plaintiff met with Ms. Garg, who informed Plaintiff that she would now report to Bebe Zhao, a new hire who had taken over Plaintiff's enterprise portfolio while Plaintiff was on leave, thereby inserting a management layer between Plaintiff and Ms. Garg where previously none existed. Plaintiff's position that Ms. Garg promised her in December 2025 was also given to James Williams, a new hire.

43. Plaintiff's new position upon return from leave was not equivalent to her prior position by any meaningful measure. Indeed, Plaintiff's prior role included revenue responsibility of billions of dollars in run rate and supporting a team of approximately 100 salespeople. Plaintiff's new role covering the Global Systems Integrator ("GSI") portfolio carried revenue responsibility of millions of dollars of run rate and supported a sales team of only five employees. Plaintiff's new position carried none of the executive visibility that had previously defined her role. Plaintiff was, in substance, an extraneous head as her GSI portfolio was also already being covered by a new junior hire who had half the years of experience of Plaintiff.

44. Despite the effective demotion in her role, Plaintiff accepted the change because she was not provided an alternative by Defendant, and Defendant identified no path back to Plaintiff's prior role.

45. Notably, two of Plaintiff's colleagues on the same team took paternity leave of comparable duration. One colleague took leave between February and June 2026; another took leave between May and September 2025. Despite the similar length of leave, Defendant preserved those employee's roles through a temporary coverage model. Plaintiff was the only employee on her team who took protected leave and returned to find her responsibilities permanently reassigned.

46. On or about June 2, 2026, her second day back to work, Plaintiff used her work laptop to exchange personal iMessages with her husband, Michael Zuccarino, who had begun working at Forge, a seed-stage startup, on January 12, 2026, while Plaintiff was hospitalized. The substance of the exchange was a discussion of industry-wide challenges in artificial intelligence deployment. Plaintiff observed that enterprise deployments are protracted and difficult, citing as an example a publicly announced issue involving one of Defendant's customers, along with Defendant's publicly announced move down-market. Importantly, both facts were already in the public domain: the Goldman Sachs partnership had been announced globally on February 6, 2026, and Defendant's mid-market and small-to-medium business strategy had been announced in its own press releases of May 4 and May 13, 2026.

47. Importantly, Plaintiff's June 2, 2026, message to her husband included no financial data, no product roadmap, and no material non-public information. Plaintiff did copy

and paste an internal Slack message regarding a delayed deployment timeline, the purpose of which was to caution her husband that enterprise deployment is a long road, even for a company with Defendant's resources.

48. On or about June 9, 2026, Pat Fogarty, an internal risk investigator, contacted Plaintiff to speak. That same day, Plaintiff was interviewed by Mr. Fogarty and one of Defendant's Employee Relations representatives, who accused Plaintiff of maliciously divulging confidential information, including the Slack message Plaintiff pasted, to a material competitor backed by OpenAI, and also accused her of failing to disclose a conflict of interest.

49. Plaintiff responded to Defendant's allegations that the allegedly "malicious" disclosure was a personal conversation with her spouse and that zero confidential or proprietary material was disclosed. Plaintiff further responded by pointing out that Forge is not a competitor. Forge was, at the time, a seed-stage company with less than $10 million in recurring revenue and is itself one of Defendant's customers. Indeed, Plaintiff asked Mr. Fogarty why Defendant would permit a purported competitor to build on its own models, and why if Defendant's leadership publicly identified OpenAI and Google as its "existential" competitors, a seed stage startup would suddenly qualify as a competitor. Mr. Fogarty had no response. Importantly, Defendant's Confidential Information and Invention Agreement conveniently defines a competitor as any entity "competitive in any nature" – a definition so broad as to encompass essentially every technology company in the world.

50. In addition to the above, Plaintiff also offered further exculpatory evidence, specifically confirming that Open AI Startup Fund, an entity separate from OpenAI itself, had written a $500,000 seed check approximately three years earlier, had not participated in any subsequent fundraising round since that initial seed check, held less than one percent of the company, and exercised no control over Forge whatsoever. That same evening Mr. Fogarty acknowledged that he would include this in his notes.

51. As to the conflict-of-interest allegations, Mr. Zuccarino began his employment at Forge on the day Plaintiff's medical leave commenced, while she was incapacitated and hospitalized. Defendant did not notify Plaintiff of any obligation or deadline to update or re-

disclose conflicts upon her return, and her attention on her **second** day back was on reintegrating into a role that had just learned had been diminished during protected leave.

52. On or about June 15, 2026, Defendant terminated Plaintiff's employment, less than two weeks following her leave.

**FIRST CAUSE OF ACTION**
**Discrimination in Violation of FMLA**
**(29 U.S.C. §§2601-2619; 29 U.S.C. §§ 2651-2654)**

53. Plaintiff re-alleges and incorporates by reference all of the above paragraphs as if they were set forth here in full.

54. 29 U.S.C. § 2615(a)(2) makes it unlawful for an employer to discharge or in any other manner discriminate against any individual for requesting FMLA leave.

55. Plaintiff was terminated by Defendant on June 15, 2026, following her request for and return from FMLA leave on April 15, 2026

56. While Plaintiff was on protected leave, Defendant replaced Plaintiff with less experienced employees. Upon her return from leave, Plaintiff was demoted and placed under the supervision of an employee hired to replace her.

57. Plaintiff was terminated on or about June 15, 2026, just two weeks following her return from leave.

58. By reason of the conduct of Defendants, Plaintiff has necessarily retained attorneys to prosecute this action. Plaintiff is therefore entitled to reasonable attorneys' fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

59. As a result of Defendants' violations of the FMLA, Plaintiff has suffered past and present loss of income, mental anguish, humiliation, embarrassment, loss of enjoyment of life, loss of job identity, and other damages.

60. In addition to attorneys' fees and costs, Plaintiff is also entitled to backpay, liquidated damages, compensatory and punitive damages, pre- and post-judgment interest, and all other relief available under the statutes.

/ / /

/ / /

/ / /

**SECOND CLAIM FOR RELIEF**
**Interference with FMLA Rights**
**(29 U.S.C. §§ 2601-2619; 29 U.S.C 2651-2654)**

61. Plaintiff re-alleges and incorporates by reference all of the above paragraphs as if they were set forth here in full.

62. The FMLA, 29 U.S.C. §§ 2601-2619; 29 U.S.C. §§ 2651-2654, provides unpaid, job-protected leave for eligible employees for numerous reasons, including for reasons related to the birth of a child.

63. Plaintiff was terminated by Defendant on June 15, 2026, following her request for and return from FMLA leave on April 15, 2026

64. While Plaintiff was on protected leave, Defendant replaced Plaintiff with less experienced employees. Upon her return from leave, Plaintiff was demoted and placed under the supervision of an employee hired to replace her.

65. Plaintiff was terminated on or about June 15, 2026, just two weeks following her return from leave.

66. By reason of the conduct of Defendants, Plaintiff has necessarily retained attorneys to prosecute this action. Plaintiff is therefore entitled to reasonable attorneys' fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

67. As a result of Defendants' violations of the FMLA, Plaintiff has suffered past and present loss of income, mental anguish, humiliation, embarrassment, loss of enjoyment of life, loss of job identity, and other damages.

68. In addition to attorneys' fees and costs, Plaintiff is also entitled to backpay, liquidated damages, compensatory and punitive damages, pre- and post-judgment interest, and all other relief available under the statutes.

**THIRD CLAIM FOR RELIEF**
**Discrimination in Violation of the California Family Rights Act**
**(Cal. Gov't. Code § 12945.2)**

69. Plaintiff re-alleges and incorporates by reference all of the above paragraphs as if they were set forth here in full.

70. "It shall be an unlawful employment practice for any employer, as defined in paragraph (4) of subdivision (b), to refuse to grant a request by any employee with more than 12

months of service with the employer, and who has at least 1,250 hours of service with the employer during the previous 12-month period or who meets the requirements of subdivision (r), to take up to a total of 12 workweeks in any 12-month period for family care and medical leave. "It shall be an unlawful employment practice for an employer to ... discriminate against, any individual because of. . .[a]n individual's exercise of the right to family care and medical leave." (Cal. Gov't. Code § 12945.2(k)(1).).

71. On or about April 15, 2026, Plaintiff exercised her protected right to take medical leave. Before doing so, Plaintiff had a positive performance record.

72. Plaintiff returned to work on or about June 1, 2026, ready and willing to resume her duties. However, on her return, Plaintiff learned that Defendant had replaced Plaintiff and that she would be demoted in her role.

73. Plaintiff's CFRA Leave was a substantial motivating factor in Defendant's decision to demote Plaintiff and to terminate Plaintiff's employment.

74. By reason of the conduct of Defendant, Plaintiff has necessarily retained attorneys to prosecute this action. Plaintiff is therefore entitled to reasonable attorneys' fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

75. As a result of Defendant's violations of the CFRA, Plaintiff has suffered past and present loss of income, mental anguish, humiliation, embarrassment, loss of enjoyment of life, loss of job identity, and other damages.

## FOURTH CLAIM FOR RELIEF

**Disability Discrimination**

**(Cal. Gov't. Code § 12940(a))**

76. Plaintiff re-alleges and incorporates by reference all of the above paragraphs as if they were set forth here in full.

77. At all times relevant herein, Defendant was an "employer" under the FEHA. Specifically, Defendant employed five or more employees.

78. California Government Code section 12940(a) expressly prohibits employers from discriminating against an employee because of an employee's disability.

79. As reflected above, Plaintiff had a disability and repeatedly informed Defendant about her disability.

80. Although Defendant granted Plaintiff leave for her disability and stated that it would provide accommodations for her disability upon return from leave, Defendant terminated Plaintiff's employment within two weeks of her return from leave.

81. While Plaintiff had two male colleagues who were able to return to their positions following paternity leave, Plaintiff was replaced while on leave, demoted upon return and terminated within two weeks of her return to work and request for further accommodations.

82. As a proximate result of Defendant's discriminatory conduct, Plaintiff suffered and continues to suffer general damages in an amount according to proof.

83. As a further proximate result of the aforementioned violations, Plaintiff suffered harm and is entitled to recovery of medical expenses, unpaid wages, cost of suit, and reasonable attorneys' fees, all in an amount to be determined at trial.

84. Defendant's discriminatory conduct based on Plaintiff's disability described above was a substantial motivating factor in terminating Plaintiff's employment.

85. Defendant's discriminatory conduct above was a substantial factor in causing Plaintiff's harm.

86. On information and belief, in doing the acts herein alleged, Defendant acted with oppression, malice, and in conscious disregard of Plaintiff's rights and she is therefore entitled to exemplary damages in an amount according to proof at the time of trial.

**<u>FIFTH CLAIM FOR RELIEF</u>**
**Retaliation in Violation of FEHA**
**(Cal. Gov't. Code § 12940(m)(2))**

87. Plaintiff re-alleges and incorporates by reference all of the above paragraphs as if they were set forth here in full.

88. California Government Code section 12940(m)(2) makes it unlawful for an employer to "retaliate or otherwise discriminate against a person for requesting accommodation, regardless of whether the request for accommodation was granted."

89. California Code of Regulations, title 2, section 11039(a)(2)(F) provides, in pertinent part, that "it is unlawful for any employer to ... deny, interfere with, or restrain an

employee's rights to reasonable accommodation, . . . including retaliating against the employee because she has exercised her right to reasonable accommodation . . ."

90. Throughout her employment, Plaintiff made multiple requests for reasonable accommodation arising from her disability. Plaintiff regularly communicated her continued need for accommodations, including for heart transplant surgery and recovery from that surgery.

91. Plaintiff's requests for accommodation were protected activity under Government Code section 12940(m)(2). In response to Plaintiff taking protected leave, Defendant first demoted Plaintiff upon her return from leave, and then terminated her employment within two weeks of her return.

92. As a proximate result of Defendant's retaliatory conduct against Plaintiff, Plaintiff suffered and continues to suffer general damages in an amount according to proof.

93. As a further proximate result of the aforementioned violations, Plaintiff suffered harm and is entitled to recovery of medical expenses, unpaid wages, cost of suit, and reasonable attorneys' fees, all in an amount to be determined at trial.

94. Defendant's unlawful conduct described above was a substantial factor in causing Plaintiff's harm.

95. On information and belief, in doing the acts herein alleged, Defendant acted with oppression, malice, and in conscious disregard of Plaintiff's rights and she is therefore entitled to exemplary damages in an amount according to proof at the time of trial.

## SIXTH CLAIM FOR RELIEF

### Wrongful Termination in Violation of Public Policy

96. Plaintiff re-alleges and incorporates by reference all of the above paragraphs as if they were set forth here in full.

97. It is the policy of the State of California to prevent employers from terminating or otherwise discriminating against employees because of their disability.

98. It is the policy of the State of California to prevent employers from terminating or otherwise discriminating against employees because they have requested reasonable accommodations.

99. It is the policy of the State of California to prevent employers from discriminating and/or terminating employees because they requested medical leave for a serious medical condition.

100. It is the policy of the State of California to prevent employers from discharging employees to avoid paying them wages earned. (*Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1147.)

101. As set forth above, Plaintiff suffered a physical disability which required her to undergo heart transplant surgery at the age of 32 and made repeated requests for reasonable accommodation throughout her employment.

102. Plaintiff also took protected CFRA leave beginning April 15, 2026.

103. Defendant terminated Plaintiff's employment less than two weeks following her return from protected leave.

104. Defendant's decision to terminate Plaintiff was substantially motivated by her disability, her requests for accommodation, and her protected leave, in violation of the fundamental public policies of the State of California.

105. As a proximate result of Defendant's actions described in the facts above, Plaintiff has suffered the loss of wages/salary, benefits, and additional amounts of money Plaintiff would have received had she not suffered adverse employment action(s).

106. As a further proximate result of Defendant's actions, Plaintiff has been harmed in that Plaintiff has suffered mental anguish and emotional distress in an amount to be established at trial.

107. Plaintiff further alleges that Defendant acted with fraud, oppression, and malice thus entitling Plaintiff to recover exemplary damages sufficient to punish and make an example of the Defendant.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this court:

1. Order Defendant to pay Plaintiff for the wages, salary, employment benefits, pension benefits, and other compensation denied or lost to Plaintiff by reason of Defendant's violations of the law, in an amount to be proven at trial;

2. Order Defendant to pay Plaintiff compensatory damages for Plaintiff's emotional pain and suffering.

3. Order Defendant to pay Plaintiff exemplary damages;

4. Order Defendant to pay Plaintiff liquidated damages as provided under the FMLA;

5. Order Defendant to pay Plaintiff reasonable attorneys' fees, reasonable expert witness fees, and other costs of the action;

6. Order Defendant to pay Plaintiff interest on such damages as are appropriate, including pre- and post-judgment interest;

7. That Defendant be permanently enjoined from engaging in the unlawful, unfair, and fraudulent acts and practices alleged herein; and

8. Grant such other and further relief as this court may deem proper and just.

Dated: November 16, 2026

Respectfully submitted,

QUINTANA HANAFI, LLP

By: ______________________

Rory C. Quintana
John J. Darin
*Attorneys for Plaintiff Megan Kao*

**JURY DEMAND**

Plaintiff demands trial by jury of all claims and causes of action so triable.

Dated: November 16, 2026

Respectfully submitted,

QUINTANA HANAFI, LLP

By: ______________________

Rory C. Quintana
John J. Darin
*Attorneys for Plaintiff Megan Kao*

# EXHIBIT A

STATE OF CALIFORNIA | California Housing and Homelessness Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

November 6, 2026

John Jacob Darin
, CA

RE: **Notice to Complainant's Attorney**
CRD Matter Number: 202611-38209306
Right to Sue: Kao / Anthropic, Inc. (dba Anthropic, PBC)

Dear John Jacob Darin:

Attached is a copy of your complaint of discrimination filed with the Civil Rights Department (CRD) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

STATE OF CALIFORNIA | California Housing and Homelessness Agency
GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

Civil Rights Department
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

November 6, 2026

RE: **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202611-38209306
Right to Sue: Kao / Anthropic, Inc. (dba Anthropic, PBC)

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for CRD's Small Employer Family Leave Mediation Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Reproductive Loss Leave, or Bereavement Leave (Government Code sections 12945.2, 12945.6, or 12945.7) has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. You may contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@calcivilrights.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

STATE OF CALIFORNIA | California Housing and Homelessness Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

November 6, 2026

Megan Kao
3758 21st Street
San Francisco, CA 94114

RE: **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202611-38209306
Right to Sue: Kao / Anthropic, Inc. (dba Anthropic, PBC)

Dear Megan Kao:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective November 6, 2026 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for CRD's Small Employer Family Leave Mediation Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Reproductive Loss Leave, or Bereavement Leave (Government Code sections 12945.2, 12945.6, or 12945.7) has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. Contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@calcivilrights.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

STATE OF CALIFORNIA | California Housing and Homelessness Agency
GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

Civil Rights Department
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

After receiving a Right-to-Sue notice from CRD, you may have the right to file your complaint with a local government agency that enforces employment anti-discrimination laws if one exists in your area that is authorized to accept your complaint. If you decide to file with a local agency, you must file before the deadline for filing a lawsuit that is on your Right-to-Sue notice. Filing your complaint with a local agency does not prevent you from also filing a lawsuit in court.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**Civil Rights Department**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**
Megan Kao CRD No. 202611-38209306
Complainant,
vs.

Anthropic, Inc. (dba Anthropic, PBC)
500 Howard Street
San Francisco, CA 94105

Respondents

---

**1.** Respondent **Anthropic, Inc. (dba Anthropic, PBC)** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2**. Complainant **Megan Kao**, resides in the City of **San Francisco,** State of **CA.**

**3**. Complainant alleges that on or about **June 15, 2026**, respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's disability (physical, intellectual/developmental, mental health/psychiatric) and as a result of the discrimination was terminated, demoted, denied work opportunities or assignments, denied accommodation for a disability, denied family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies.

**Complainant experienced retaliation** because complainant requested or used a disability-related accommodation, requested or used family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies and as a result was terminated, demoted, denied work opportunities or assignments.

**Additional Complaint Details:** See attached statement.



Date Filed: November 6, 2026

VERIFICATION

I, **John J. Darin**, am the **Attorney** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. The matters alleged are based on information and belief, which I believe to be true.

On November 6, 2026, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Albany, CA**



Date Filed: November 6, 2026